**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **JENNIFER MARKS, individually, and as personal representative of the ESTATE of CHARLES H. MARKS, IV, *et al.*,** | |
| *Plaintiffs,* | |
| **v.** | **Civil No.: 1:25-cv-02127-JRR** |
| **SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

Pending before the court is Defendant Selective Insurance Company of South Carolina's Motion to Dismiss. (ECF No. 9; the "Motion.")  Though not so titled, Defendant alternatively seeks summary judgment. *Id.*  The court has reviewed all papers.  Notwithstanding Plaintiffs' request for hearing, none is necessary and the court declines to convene one.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be denied.

## I.     **BACKGROUND**[1]

Adult Plaintiffs in this action include Jennifer Marks, the surviving spouse of Charles H. Marks, IV, and Charles Vincent Marks, an adult child of Charles H. Marks, IV.  (ECF No. 7; the "Complaint.")  Jennifer Marks brings this action, individually, as surviving spouse of Charles H. Marks, IV, as Personal Representative of the Estate of Charles H. Marks, IV, and as parent and

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint.  (ECF No. 7.)  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

next friend of the minor children of Charles H. Marks, IV.  *Id.* at p. 1.  This action is also brought to the use of Charles H. Marks, III, the sole surviving parent of Charles H. Marks, IV.  *Id.*

At around 3:40 p.m. on January 30, 2022, Charles H. Marks, IV ("Decedent") was operating his Nissan van while driving northbound on I-95.  (ECF No. 7 ¶ 8.)  An unidentified blue automobile (the "Blue Sedan") was also traveling northbound at I-95 at this time.  *Id.* ¶ 9. While Decedent was merging his van to the right, the Blue Sedan proceeded to change lanes to the left, and the two almost collided.  *Id.*  Both vehicles swerved to avoid collision.  *Id.*  The driver of the Blue Sedan then drove aggressively in traffic toward Decedent.  *Id.*  Decedent continued northbound on I-95, away from the Blue Sedan.  *Id.* ¶¶ 10–11.  As Decedent approached Maryland Route 100, "the Blue Sedan proceeded at a high rate of speed moving aggressively and dangerously among the middle and right lanes of northbound 1-95."  *Id.* ¶ 11.  The Blue Sedan then "swerved to the left, moving across several lanes of traffic to the far left lane of northbound I-95," driving next to where Decedent drove in the third lane.  *Id.* ¶ 12.  "As the Blue Sedan approached the Decedent on the left, the occupant(s) of the Blue Sedan shot [Decedent] in the left temple of his head with a firearm that discharged a .22 caliber bullet."  *Id.*  "Thereafter, the Blue Sedan accelerated in the left lane and disappeared unidentified on northbound I-95 at a high rate of speed."  *Id.*

Upon suffering the gunshot wound, Decedent lost control of his van and collided with the median barrier, after which he was transported to University of Maryland Shock Trauma Center. (ECF No. 7 ¶¶ 13, 14.)  Decedent was initially conscious after the accident and experienced fright, pain, and anguish both during and after the road rage incident.  *Id.*  Decedent died about 25 hours later, on January 31, 2022.  *Id.*

Decedent's van was covered by an insurance policy (ECF No. 11-2; the "Policy'") with Defendant.  (ECF No. 7 ¶ 20.)  At issue here, the Policy includes a provision for uninsured motorist coverage, providing:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage", caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

(Policy, ECF No. 11-2 at 2; the "Uninsured Motorist Provision.")[2]  An "uninsured motor vehicle" under the Policy includes "a hit-and-run vehicle," where "neither the driver nor owner can be identified," that hits an insured or covered vehicle or causes an accident that results in bodily injury. *Id.* at p. 5.  An "accident" refers to "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *Id.* at p. 17.  "Bodily injury," in turn, refers to "bodily injury, sickness or disease sustained by a person, including death resulting from any of these." *Id.*  Defendant failed to pay Plaintiffs' benefits under the Uninsured Motorist Provision of the Policy.  (ECF No. 7 ¶¶ 26, 32, 36, 40, 44, 48, 52.)

Plaintiffs initiated this breach of contract action against Defendant on January 2, 2025, in the Circuit Court of Anne Arundel County, Maryland.  (ECF Nos. 1-6, 7.)  Plaintiffs assert seven breach of contract claims: one brought as a survival claim on behalf of Decedent's Estate (Count I); and six brought as wrongful death claims on behalf of Decedent's surviving spouse (Count II), minor children (Counts III, IV, V, VI), and adult son (Count VII).   (ECF No. 7 ¶¶ 25–52.)  Defendant subsequently removed the action to this court on July 2, 2025. (ECF No. 1.)  Defendant

---

[2] Citations to this document refer to CM/ECF pagination.

then filed the instant Motion to dismiss Plaintiffs' Complaint or, alternatively, for summary judgment. (ECF No. 9.)

## II.     LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)[3]

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has

---

[3] Defendant moves in the alternative for summary judgment. Such a motion implicates the court's discretion under Federal Rule of Civil Procedure 12(d), which provides "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because the only matter outside the pleadings that Defendant offers is integral to the Complaint (as discussed *infra*) and properly considered on a motion to dismiss, and where discovery has not yet commenced, the court declines to convert the Motion. *See McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (noting that "[i]n general, summary judgment should only be granted 'after adequate time for discovery'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.  *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint.  The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity."[4]  *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021).  "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  Though not attached to the Complaint, the Policy, as the underlying contract at issue in this dispute, is integral to the Complaint.  *See McMillan v. Kansas City Life Ins. Co.*, 762 F. Supp. 3d 443, 450 n.2 (D. Md. 2025) (noting that "contracts, like the [insurance] policy at issue here, are integral to complaints alleging breach of contract claims"); *ThinkFood Grp. LLC v. Travelers Prop. Cas. Co. of Am.*, No. 8:20-CV-02201-PWG, 2021 WL 4478725, at *2 (D. Md. Sept. 30, 2021) (noting that, in a case arising from purported breach of an insurance policy, that "[t]he insurance policy is integral to the complaint").  Where Plaintiffs do not dispute the authenticity of same, the court will consider the Policy in ruling on the instant Motion.

## III.    ANALYSIS

The Maryland legislature enacted an uninsured motorist statute (the "Uninsured Motorist Statute") "to protect innocent victims from irresponsible drivers who drive without insurance." *State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 171, 194 (2006).  It provides:

---

[4] The proffered Maryland State Police report attached to Plaintiffs' opposition is not material to the court's decision on the arguments asserted in the instant Motion; it therefore need not address same.

> [E]ach motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:
>
> (1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle;
>
> .          .          .
>
> (3) a surviving relative of the insured, who is described in § 3-904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

MD. CODE ANN., INS. § 19-509(c)(1), (3).

A "motor vehicle accident" is "an occurrence involving a motor vehicle that results in damage to property or injury to a person," but not one that "is caused intentionally by or at the direction of the insured," (here, Decedent's van). *Id.* § 19-501(c). Defendant contends that the Policy's Uninsured Motorist Provision is nearly identical to Maryland's Uninsured Motorist Statute, and caselaw on the statute therefore informs the court's consideration of Plaintiffs' breach of contract claims here. (ECF No. 9-1 at p. 6.) *See DeHaan*, 393 Md. at 194 (providing that where the Policy's "language is identical to the statutory text, it is reasonable to infer that [the insurer] intended to give it the same meaning given to the statute").[5]

With regard to the Policy, "Maryland law is well settled that 'the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts.'"[6] *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 50–

---

[5] Further, both sides rely on authority regarding the Uninsured Motorist Statute to interpret the Policy's Uninsured Motorist Provision. (ECF No. 9-1 at pp. 7–9; ECF No. 11 at pp. 8–13.)

[6] "A federal court sitting in diversity is required to apply the substantive law of the forum state . . . ." *Francis v. Allstate Ins.*, 709 F.3d 362, 369 (4th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). The parties here agree that Maryland law governs

51 (D. Md. 2020) (quoting *Mitchell v. AARP*, 140 Md. App. 102, 116 (2001)); *see Matter of Featherfall Restoration, LLC*, 491 Md. 586, 596 (2025) (recognizing same). "Generally, Maryland courts subscribe to the objective theory of contract interpretation." *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 393 (2019). Thus, courts consider insurance policies "based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation." *Featherfall*, 491 Md. at 596–97 (2025) (quoting *Credible Behav. Health*, 466 Md. at 393). Consideration turns on the "ordinary and accepted meaning" of the policy language. *Credible Behav. Health, Inc.*, 466 Md. at 394 (quoting *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 88 (2010)); *see Brown Goldstein Levy LLP v. Fed. Ins. Co.*, 68 F.4th 169, 174 (4th Cir. 2023) (noting same).

Defendant here advances two arguments: Plaintiffs' claims fail as a matter of law because 1) the intentional shooting by the operator/occupant(s) of the Blue Sedan was not an accident within the meaning of the Policy, and 2) Decedent's injuries and death did not arise from the ownership, use, or maintenance of a motor vehicle according to their common meaning.

### A. Intentional Shooting as an "Accident" Under the Policy[7]

Defendant first argues that because Decedent's death was caused by "an intentional act by occupant(s)" of the Blue Sedan, it was not an "accident" according to the "clear and unambiguous

---

Plaintiffs' breach of contract claims in this case. (ECF No. 9-1 at p. 4; ECF No. 11 at p. 6.) *See Brownlee v. Liberty Mut. Fire Ins. Co.*, 456 Md. 579, 585 (2017) (noting that "Maryland has long recognized the doctrine of *lex loci contractus*" that "requires that, when determining the construction, validity, enforceability, or interpretation of a contract, we apply the law of the jurisdiction where the contract was made" (citation omitted)); *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) (noting, in the insurance contract dispute context, that this is typically "where the policy is delivered and the premiums are paid").

[7] It is unclear whether Defendant intends to withdraw this argument in its reply, writing: "The issue of whether the shooting may properly be considered an accident for purposes of a claim for uninsured motorist benefits does not need to be decided by this Court for purposes of [Defendant's] Motion to Dismiss . . . ." (ECF No. 12 at p. 3.) In opting not to address this issue in its reply, Defendant's argument rests entirely on three conclusory sentences, absent legal authority, set forth in its Motion. Nonetheless, for the sake of completeness, the court considers Defendant's general assertion that an accident cannot be based on an intentional act.

terms" of the Policy.  (ECF No. 9-1 at pp. 6–7.)  Defendant cites no authority or Policy provision to support its argument.  In failing to do so, Defendant has not met its burden.  An "accident" under the Policy refers to "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"  (Policy, ECF No. 11-2 at p. 17.)    Similarly, a "motor vehicle accident" under the Uninsured Motorist Statute refers to, relevant here, "an occurrence involving a motor vehicle that results in damage to property or injury to a person."   MD. CODE ANN., INS. § 19-501(c).  Contrary to Defendant's apparent contention, the plain language of "accident" under both the Policy and the statute do not expressly exclude intentional conduct.  *See id.*  Further, as the Honorable Deborah H. Chasanow has previously explained, the case law does not necessarily support Defendant's assertion.  *Mincey v. State Farm Ins. Co.*, 672 F. Supp. 3d 59, 63 (D. Md. 2023) (citing cases); *see also, e.g.*, *Harris v. Nationwide Mut. Ins. Co.*, 117 Md. App. 1, 8 (1997) (noting that the term "accident" "encompasses all incidents involving an automobile, whether intentional or unintentional").

The court constrains its analysis to the arguments asserted.  Based on the foregoing, the court is not persuaded (i) that the alleged shooting, as the culmination of the road rage incident, may not constitute an accident or (ii) that an accident excludes intentional conduct as a matter of law.

### B.  Decedent's Injuries Arising from Ownership, Maintenance, or Use of a Vehicle[8]

The bulk of Defendant's argument focuses on its challenge that Decedent's injury and death did not arise out of "the ownership, maintenance, or use of the uninsured motor vehicle," per the Uninsured Motorist Provision (and statute).  Defendant contends that three cases foreclose

---

[8] To the extent parties rely on cases outside of Maryland, the court agrees with Judge Chasanow that "[t]he court need not analyze these cases because Maryland case law controls and provides clear guidance here."  *Mincey v. State Farm Ins. Co.*, 672 F. Supp. 3d 59, 66 (D. Md. 2023).

Plaintiffs' theory that an intentional shooting may arise out of the ownership, use, or maintenance of a motor vehicle: the Supreme Court of Maryland's decision in *State Farm Mutual Automobile Insurance Co. v. DeHaan*, 393 Md. 163 (2006), this court's decision in *Mincey v. State Farm Ins. Co.*, 672 F. Supp. 3d 59 (D. Md. 2023); and the Appellate Court of Maryland's decision in *Wright v. Allstate Ins. Co.*, 128 Md. App. 694 (1999). The court disagrees with Defendant in full.

In *DeHaan*, the plaintiff had driven to, parked at, and entered a gas station with convenience store. *DeHaan*, 393 Md. at 167. Upon returning to his vehicle, the plaintiff found a stranger sitting in his car's driver's side. *Id.* The plaintiff then asked the stranger what he was doing, and the stranger responded by shooting him; the stranger then started the vehicle and fled the scene. *Id.* The plaintiff submitted a claim under the uninsured motorist section of his State Farm policy, which was denied. *Id.* at 168. The *DeHaan* court considered "whether injuries from the discharge of a handgun by an individual in the driver's seat of a standing vehicle with the ignition off, in the course of stealing the automobile, constitutes, for uninsured motorist coverage, a 'use' or is 'the result of a motor vehicle accident arising out of the ownership, maintenance, or *use*' of the vehicle." *Id.* at 176 (emphasis in original).

The *DeHaan* court answered in the negative, finding "the shooting had no direct or substantial relation to the use of the vehicle," and instead the shooting "broke the chain of use— even if the vehicle had been in the process of being used." *Id.* at 178–79 (2006). It further explained that, for coverage under the statute (which tracked with the policy language at issue), "the 'use' of the car must create the risk of injury." *Id.* at 179. In reaching its conclusion, the court noted that "[t]he Legislature . . . did not intend [the Uninsured Motorist Statute] to require insurance coverage against all criminal activity perpetrated in connection with a vehicle." *Id.* at 194–95. Instead, "there must be a nexus between the injury and an uninsured vehicle," and that

nexus need not meet the proximate cause standard, but "must be more than merely incidental." *Id.* at 195.

Like *DeHaan*, *Mincey* also involved an uninsured motorist coverage claim in connection with a stationary vehicle. *Mincey*, 672 F. Supp. 3d at 61. There, an altercation ensued after one individual's car door bumped another individual's car door. *Id.* The situation escalated; the decedent retrieved a baseball bat from his parked car, and another individual grabbed and threw the bat away before punching the decedent in the face. *Id.* The punch caused the decedent to fall to the ground and hit his head, resulting in his death. *Id.* The personal representative of the decedent's estate submitted a claim for uninsured motor vehicle coverage under the State Farm policy at issue. *Id.* at 62. The court noted a series of intervening events that broke the chain of vehicle use between the initial bumping of the doors and the injury. *Id.* at 65. Importantly, the court concluded that the individual's "punch 'broke the chain of use,' just like the shooting in *DeHaan* did." *Id.* The *Mincey* court concluded "the 'instrumentality of the injury' was indisputably [the individual's] punch, which occurred outside the vehicles and was unrelated to their use," and "there was no direct or substantial relationship between the use of the uninsured motor vehicle and [the decedent's] injuries." *Id.*

Finally, in *Wright*, as in *DeHaan* and *Mincey*, the matter concerned vehicles "in a stationary position." *Wright*, 128 Md. App. at 695. The *Wright* case centered on two individuals in their car that was stopped at a stop sign and in a stationary position. *Id.* While they were stopped, an acquaintance of the individuals, who had been waiting from them to arrive at the stop sign, approached them on foot and began shooting at them, before returning to his car and driving away. *Id.* at 695, 698. The court reasoned: "This is in stark contrast to the role of the vehicles . . . in *Harris*, where the vehicle[] played a prominent role in the commission of the crime[]." *Id.* at 698.

As opposed to in *Harris* (and another case not addressed here), the injury in *Wright* arose from the shooting, not "because he was using a car." *Id.*

Against the backdrop of these cases, Defendant urges that the requisite nexus between the use of a vehicle and the injury is missing here. The court acknowledges that Maryland law raises serious questions regarding when a physical assault generally related to vehicle use sufficiently arises out of the ownership, use, or maintenance of a motor vehicle. But the law also provides an important takeaway: in this inquiry, context matters. And the context here is materially distinguishable from the cited cases. Plaintiffs here allege the shooting arose from a road rage incident—there was no preexisting relationship or motive. Instead, the operator/occupant(s) of the Blue Sedan, following a near collision with Decedent's van, used the Blue Sedan to drive up near Decedent's van, and then, while driving, fire the firearm from the Blue Sedan into Decedent's van. As far as the allegations are concerned, the Blue Sedan's operator/occupant(s)'s means (and motive) to shoot Decedent arose from their use of the vehicles; and the Blue Sedan provided the proximate means to facilitate the shooting death.

As such, according to the allegations, this case does not present a circumstance where the injury was sustained while the Blue Sedan was "standing still and with the ignition off," *see DeHaan*, 393 Md. at 173, or where the shooting "occurred outside the vehicles and was unrelated to their use," *see Mincey*, 672 F. Supp. 3d at 65, or where the shooter knew and targeted Decedent, shot him from outside of his vehicle, and the Blue Sedan "was simply a means of transportation to an area" where Decedent was expected to be, *see Wright*, 128 Md. App. at 698. The allegations here are that "the cars were directly causally connected to the injuries sustained," with "active participation of the vehicle of the perpetrator or tortfeasor." *DeHaan*, 393 Md. at 185, *supra*.

11

Upon the facts alleged, the court is not persuaded that Maryland law forecloses Plaintiffs' claims.  Accordingly, where Plaintiffs allege a road rage incident culminating in a shooting facilitated by one vehicle driving alongside another, the court is persuaded Plaintiffs plausibly allege the necessary nexus between Decedent's injury and the uninsured vehicle.  Defendant remains free to reassert its arguments upon the full record at summary judgment.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 9), construed as a motion to dismiss, will be denied.

Date: March 20, 2026                                      /S/

_____
Julie R. Rubin
United States District Judge